**David J. COLE, Plaintiff,**

v.

**ROADWAY EXPRESS, INC., Defendant.**

**No. 99–CV–6579L.**

United States District Court, W.D. New York.

July 31, 2002.

Robert L. Miller, Waverly, NY, David B. Keefe, DeSisti and Keeffe, Sayre, PA, for Plaintiff.

Adam W. Perry, Hodgson, Russ, Andrews, Woods & Goodyear, Buffalo, NY, for Defendant.

## DECISION AND ORDER

LARIMER, Chief Judge.

### Procedural Background

In this action, plaintiff David Cole ("Cole"), a rejected applicant for a position as a driver for defendant Roadway Express, Inc. ("Roadway"), alleges disability discrimination in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.* ("ADA"). Currently before the Court is Roadway's mo-

tion, under FED.R.CIV.P. 56, for summary judgment. In addition, Roadway has moved to disqualify plaintiff's expert, Theodore Them, M.D. For the following reasons, Roadway's motion for summary judgment is granted, and its motion to disqualify is denied as moot.

### Factual Background

*Cole's Application for Employment with Roadway*

Cole applied for a job with Roadway on April 14, 1997 in response to the following newspaper advertisement:

ROADWAY EXPRESS INC., is currently taking employment applications for Casual/City Driver/Dock positions. Qualified individuals should call 734–4109 for an appointment. The individual we are looking for must possess a satisfactory record of prior employment, possess a valid/current CDL [commercial driver's license] and must be physically qualified. Roadway Express Inc. is a EOE/M/F/D/V [equal opportunity employer/male/female/disabled/veterans].

It is undisputed that at the time of his application, Cole had a long history of back problems, and he had recently undergone a spinal fusion operation. Cole had a valid and current CDL at the time of his application for the Roadway driver position, and had approximately 12 years' truck driving experience, including eight years' prior experience as a commercial truck driver, and four years' experience as a vehicle operator for the United States Air Force. Cole also had experience teaching vocational education courses on obtaining a CDL.

On April 28, 1997, the day before he was scheduled for a physical examination for the Roadway position, Cole's treating orthopedic surgeon, Dr. Alan Gillick, cleared Cole for work without any physical restrictions. Plaintiff maintains that when he applied for the position in question, he was entirely capable of performing the essen-

tial functions of the truck driver's job with or without reasonable accommodation.

Roadway's William Van Wagner interviewed Cole for the truck driver's position. Plaintiff maintains that during the interview, Van Wagner made no mention of any lifting or pulling requirements in connection with the position.

Prior to applying for the position, Cole passed several prior United States Department of Transportation ("DOT") physical examinations, and subsequent to his interview with Roadway, he passed DOT physicals in July 1997 and in January and April 1999. It is plaintiff's position that Van Wagner lead Cole to believe that Cole was being offered the job conditioned upon his ability to pass a DOT physical examination.

Cole was thereupon referred to the Occupational Health Services department of St. Joseph's Hospital ("OHS") in Elmira for a DOT examination. Roadway contracted with OHS to be Roadway's "medical provider," meaning that Roadway paid OHS to perform physical examinations and drug testing on prospective employees. Cole cooperated with OHS and completed both the standard DOT questionnaire/physical examination form as well as a pre-placement health history form. Cole, however, argues that the health history form was not required by the DOT regulations. In any event, Cole disclosed on both forms his history of prior back surgery, and he also provided his treating physician's name and his post-surgical restrictions.

Cole's DOT examination was conducted by nurse-practitioner Janet Appier. Cole maintains that after Appier learned about Cole's history of prior back surgery, "she left the room, called Roadway, and then returned and told Cole 'you will not pass this test; you need to look for different work.'" Appier then informed Cole that

the job description and essential duties of the position required that the driver be able "to periodically lift 60 pounds from ground overhead three times in a row" and "the driver would occasionally be required to push a 250 pound skid." Plaintiff points out that Appier's clinical notes "do not reflect any significant, present, abnormal, objective physical findings, limitations or neurological dysfunction."

Cole asserts that his ability to lift 60 pounds overhead or pull a 250 pound skid was never objectively tested. In addition, Van Wagner testified that he lacked any knowledge of whether other job applicants were required to lift 60 pounds overhead or move a 250 pound skid during their physical examinations.

In the end, Cole did not pass the DOT physical examination, and, for that reason, plaintiff was not hired for the driver position.

## DISCUSSION

Defendant now moves, under FED. R.CIV.P. 56, for summary judgment, asserting that plaintiff's complaint should be dismissed in its entirety both because plaintiff is not disabled under the ADA, and even if he is, there is no evidence of discrimination in violation of the ADA.

### I. Summary Judgment—General Standards

The standard for deciding summary judgment motions is well established. Rule 56(c) provides that a motion for summary judgment shall be granted if the pleadings and supplemental evidentiary materials "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Under the rule, the burden of demonstrating the absence of any genuine issue of material fact rests on the moving party. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). After the moving party has carried its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "[T]he non-moving party must come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Id.* at 587, 106 S.Ct. 1348 (emphasis in original) (quoting Fed.R.Civ.P. 56(e)).

"Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* at 587, 106 S.Ct. 1348. When perusing the record to determine whether a rational fact-finder could find for the non-moving party, however, all reasonable inferences must be drawn in favor of the non-moving party. *See Murray v. National Broadcasting Co.,* 844 F.2d 988, 992 (2d Cir.), *cert. denied,* 488 U.S. 955, 109 S.Ct. 391, 102 L.Ed.2d 380 (1988).

The general principles underlying a motion for summary judgment fully apply to discrimination actions. *Abdu–Brisson v. Delta Air Lines, Inc.,* 239 F.3d 456, 466 (2d Cir.2001) ("It is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases"). Although courts should be cautious about granting summary judgment in cases where motive, intent or state of mind are at issue, *Dister v. Continental Group, Inc.,* 859 F.2d 1108, 1114 (2d Cir.1988); *Montana v. First Federal Savings and Loan Association of Rochester,* 869 F.2d 100, 103 (2d Cir.1989), "the salutary purposes of summary judgment—avoiding protracted, expensive and harassing trials—apply no less to discrimination cases than to ... other areas of litigation." *Meiri v. Dacon,* 759 F.2d 989, 998 (2d Cir.), *cert. denied,* 474 U.S. 829,

106 S.Ct. 91, 88 L.Ed.2d 74 (1985) (summary judgment rule would be rendered sterile if mere incantation of intent or state of mind would act as a talisman to defeat an otherwise valid motion).

Consequently, once the moving party has met its burden, the non-moving party in a discrimination action must come forward with evidence upon which a rational fact-finder could return a verdict in his favor. *See Ellenbogen v. Projection Video Services, Inc.*, 99–CV–11046, 2001 WL 736774 (S.D.N.Y. June 29, 2001) (in responding to summary judgment motion, plaintiff alleging discrimination is not absolved "from the responsibility of producing sufficient evidence from which a reasonable juror could return a verdict in his favor"). For a plaintiff in a discrimination case to survive a *motion for summary* judgment, he must do more than present "conclusory allegations of discrimination," *Meiri v. Dacon*, 759 F.2d 989 (2d Cir.), *cert. denied*, 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985); he must offer "concrete particulars" to substantiate the claim. *Id.* (cited in *Duprey v. Prudential Ins. Co.*, 910 F.Supp. 879 (N.D.N.Y.1996)).

## II. The ADA

■ The ADA prohibits discrimination in the hiring of an otherwise qualified employee because of such individual's disability. 42 U.S.C. § 12112(a). Courts evaluate disparate treatment employment discrimination claims using the burden-shifting analysis developed in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–804, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and later refined in *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 252–253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), and *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506–511, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). The *McDonnell Douglas* burden-shifting analysis is also utilized in analyzing claims based on the ADA. *See Greenway v. Buffalo Hilton Ho-*

*tel*, 143 F.3d 47, 52 (2d Cir.1998); *Glidden v. County of Monroe*, 950 F.Supp. 73, 75 (W.D.N.Y.1997).

### A. Prima Facie Case

■ In order to establish a *prima facie* case of disability discrimination, plaintiff must show that: (1) he is "disabled" within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of his job; and (3) he suffered adverse employment action because of his disability. *Wernick v. Federal Reserve Bank*, 91 F.3d 379, 383 (2d Cir. 1996); *see also Ryan v. Grae & Rybicki, P.C.*, 135 F.3d 867, 869–870 (2d Cir.1998); *Kotlowski v. Eastman Kodak Co.*, 922 F.Supp. 790, 796 (W.D.N.Y.1996). "[T]he plaintiff cannot meet this burden through reliance on unsupported assertions," but "must come forward with evidence that would be sufficient to support a jury verdict in his favor." *Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir.1995).

### 1. Disability Under the ADA

■ To survive a summary judgment motion, an ADA plaintiff must meet the threshold burden of establishing that he is "disabled," as that term is defined under the statute. An individual is considered disabled, within the meaning of the ADA, if he: (1) has a physical or mental impairment that substantially limits one or more of the major life activities; (2) has a record of such an impairment; or (3) has been regarded as having such an impairment. 42 U.S.C. § 12102(2)(A)–(C).

The EEOC has defined a "physical impairment" under the statute as:

Any physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense or-

gans, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine.

29 C.F.R. § 1630.2(h)(1).[1]

Cole may be considered "disabled" for purposes of the statute if he shows that, although not actually disabled, he was "regarded as having such an impairment." 42 U.S.C. § 12102(2)(C). The EEOC regulations define being "regarded" as having such an impairment if the individual:

(1) Has a physical or mental impairment that does not substantially limit a major life activity but is treated by a covered entity as constituting such limitation;

(2) Has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or

(3) Has none of the impairments defined [by the EEOC regulations] but is treated by a covered entity as having a substantially limiting impairment.

29 C.F.R. § 1630.2(1).

Cole does not argue that his impairment substantially limits a major life activity. He does not and has not claimed that he is disabled. Indeed, Cole claims that he was capable of performing all the essential functions of the job in question without accommodation. Therefore, Cole is relegated to demonstrating that he was "treated by [Roadway] as having a substantially limiting impairment." 29 C.F.R. § 1630.2(1)(3). Of course, to be "substantially limiting," Roadway must have treated Cole as:

(i) Unable to perform a major life activity that the average person in the general population can perform; or

(ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1). The EEOC defines "major life activities" as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i) (emphasis supplied); *Heyman, v. Queens Village Committee For Mental Health,* 198 F.3d 68, 72 (2d Cir.1999).

■ In support of its motion for summary judgment, defendant principally asserts that plaintiff was not regarded as disabled; rather, quite simply, DOT regulations required defendant to send plaintiff for a physical examination, and also required defendant to reject plaintiff when the medical examiner refused to certify him. Plaintiff received the offer, conditioned on his passing the physical examination. He took the required physical examination and during it disclosed that he had prior back problems. The examiner then contacted Roadway and determined that plaintiff would be unable to perform some of the jobs's requests such as lifting 60 pounds and pushing a 250 pound skid. An independent medical examiner at OHS, refused to certify plaintiff as qualified and, therefore, Roadway did not hire him. In fact, Roadway suggests that it *could not* hire plaintiff without the health certification.

---

1. Although "[t]he Supreme Court has recently drawn into question the degree of deference due to the EEOC's interpretations of the term 'disability' .... [n]onetheless, until a more definite pronouncement is forthcoming, it remains the law of this Circuit that [the Second Circuit] will give weight to the EEOC's interpretations." *Muller v. Costello,* 187 F.3d 298, 313 (2d Cir.1999).

In response, plaintiff relies on a series of inferences and circumstantial evidence to suggest that Roadway's motives were improper. There is no admissible evidence to support plaintiff's theory, however. To the contrary, there is evidence that Roadway was merely attempting to comply with applicable regulations. Once medical certification is denied, even if the denial was without basis, the transport company may *not* hire the applicant to drive a truck on public roads without violating DOT regulations. The purpose of such regulation is obvious: the public has a compelling interest in maintaining safe roadways. That interest would be severely compromised if persons with health problems that might have a detrimental impact on their ability to drive could proceed uninhibited in large, potentially dangerous, trucks. In plaintiff's case, he admits that just before his examination, he had been under restrictions by his own physician.

In light of the Second Circuit's analysis in *Giordano v. City of New York*, 274 F.3d 740 (2d Cir.2001), I do not find that plaintiff has proffered sufficient evidence that the company regarded plaintiff as disabled to survive the instant motion for summary judgment. *See Conant v. City of Hibbing*, 271 F.3d 782 (8th Cir.2001) (holding, *inter alia*, in context of pre-employment disability claim, that "the mere fact that [defendant] was aware of [plaintiff's] past medical condition and might have perceived [plaintiff] as still having a medical condition … is insufficient to establish that [defendant] regarded [plaintiff] as disabled").

Viewing the record in the light most favorable to plaintiff, I find that there are no genuine issues of material fact here, and that Roadway is entitled to summary judgment. The evidence simply shows that Cole failed to pass a test, the passage of which was mandated by regulation. In my view, no rational trier of fact could reasonably conclude from these facts that the incident at issue constitutes unlawful discrimination because Cole was perceived to be disabled. Such an inference simply cannot be sustained on these facts. Even drawing every inference in plaintiff's favor, then, he has not shown the existence of a genuine issue of fact.

I reject plaintiff's argument that he was subjected to an impermissible pre-offer physical examination. Cole himself, in his EEOC charge, makes the following statement, suggesting that even he considered the examination to have occurred after a conditional offer: "Respondent offered me a job conditioned on my ability to pass a physical examination." I find, therefore, that the examination was not impermissibly conducted prior to an offer.

### B. *Pretext*

■  In sum, plaintiff has failed to establish a *prima facie* case. However, even generously assuming that plaintiff had set forth the necessary elements for a *prima facie* case of discrimination under the ADA, Roadway has submitted ample evidence in support of its proffered, legitimate, non-discriminatory reason for taking the action it did. It cannot be disputed that Cole did not pass his DOT physical examination. Nor can it be disputed that passing such an examination was a condition precedent to employment as a driver for Roadway. Indeed, if Cole failed to pass the DOT physical examination, and Roadway nevertheless hired him, Roadway would be violating the applicable DOT regulations.

This evidence was more than sufficient to rebut the presumption of discrimination that might have been raised by any possible *prima facie* case. I simply cannot see any evidence that plaintiff has proffered tending to show that Roadway's stated reasons were pretextual, and his mere

speculations are insufficient to establish pretext. *See Duclair v. Runyon,* 166 F.3d 1200, 1998 WL 852867 (2d Cir.1998) (noting that "the Supreme Court has made clear, as have numerous opinions from this court, that the burden of persuasion—the obligation to prove his or her case—is at all times borne by the plaintiff").

## III. The Motion to Disqualify

Because I find that summary judgment is warranted, I need not address defendant's motion to disqualify plaintiff's expert, Theodore Them, due to any alleged conflict of interest. Defendant's motion to disqualify Dr. Them is therefore denied as moot.[2]

## CONCLUSION

For all of the foregoing reasons, defendant's motion for summary judgment (Dkt. # 22) is granted. Defendant's motion to disqualify (Dkt. # 24) is denied as moot. The complaint is dismissed with prejudice.

IT IS SO ORDERED.

---

**2.** Even if I were to reach the merits, I would deny defendant's motion to disqualify. Them was never retained by defendant as an expert in this case. He was merely connected in a rather limited way to OHS, by virtue of a contractual arrangement to provide *locum tenens* coverage on an hourly basis. The important thing here is that the relationship did not begin until December 1, 1999, over two years and seven months after Cole's examination was conducted at OHS. As a result, Roadway had no reasonable expectation to believe any confidential relationship existed between it and Them.