Filed 8/5/25

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

|  |  |
|---|---|
| JEFFRY UMAÑA MUÑOZ et al.,<br><br>          Petitioners,<br><br>v.<br><br>THE REGENTS OF THE UNIVERSITY OF CALIFORNIA,<br><br>          Respondent. | A171410 |

     Petitioners Jeffry Umaña Muñoz and Iliana Perez challenge the employment policy of the Regents of the University of California (University) that prohibits it from employing undocumented students who do not have federal work authorization. They argue, among other things, that the University's policy is unlawful because it discriminates in violation of the Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.) and specifically section 11028, subdivision (f)(3) of title 2 of the California Code of Regulations, which provides that it is "an unlawful practice for an employer or other covered entity to discriminate against an employee because of the employee's or applicant's immigration status, unless the employer has shown by clear and convincing evidence that it is

required to do so in order to comply with federal immigration law."

The University has expressly taken no position on whether its policy is required by federal law. Rather, it argues that its policy does not discriminate based on immigration status and that even if it did, decisions regarding the policy are vested in its sound discretion, and the continued use of the policy is supported by its "analysis of the risks to the University and its students and employees if it hires undocumented students without federal work authorization, including the significant risk that the federal government will read [the Immigration Reform and Control Act of 1986 (IRCA) (8 U.S.C. § 1101 et seq.)] to apply to the University and initiate enforcement action and a federal court may agree."

We conclude that the University's employment policy facially discriminates based on immigration status and that, in light of applicable state law, the discriminatory policy cannot be justified by the University's proffered reason. As a result, the University abused its discretion when it relied on improper criteria in deciding to continue using its policy. Accordingly, we will issue a writ of mandate directing the University to reconsider its policy based on proper criteria.

## BACKGROUND

Section 1324a of IRCA (hereafter Section 1324a) makes it unlawful for "a person or other entity" to knowingly hire a person who is not either lawfully admitted for permanent residence in the United States or authorized for employment under federal

2

law.  (§ 1324a, (a)(1), (h)(3).)  The same section authorizes the federal government to investigate and bring both civil and criminal enforcement actions regarding potential violations. (§ 1324a(e)–(f).)  The term "entity" is defined for purposes of Section 1324a by a federal regulation to mean "any legal entity, including but not limited to, a corporation, partnership, joint venture, governmental body, agency, proprietorship, or association."  (8 C.F.R. § 274a.1(b) (2023).)  Section 1324a(a)(7) provides that "[f]or purposes of this section, the term 'entity' includes an entity in any branch of the Federal Government."

According to the University, every year, thousands of students without lawful immigration status (undocumented students) attend its campuses.  Under its long-standing employment policy, the University hires undocumented students who are enrolled in the Deferred Action for Childhood Arrivals (DACA) program because under that program, eligible undocumented students can obtain temporary work authorization from the federal government.  In 2018, however, the federal government stopped accepting new applications for DACA.  (See *Dep't of Homeland Sec. v. Regents of the Univ. of California* (2020) 591 US 1, 9–13 [detailing history of DACA].)  As a result, the University asserts, the number of undocumented students without work authorization on the University's campuses has grown significantly.

In May 2023, the University created a working group to assess whether it could offer paid employment to students regardless of whether they have federal work authorization.  In

3

January 2024, however, it voted to dissolve the working group without implementing any changes to the policy.  The minutes of the meeting explain:  "Since last May, [the University] has devoted substantial time and resources to examining ways to further expand its support by providing undocumented students with equal access to educational employment experiences.  Initially, the focus was on an academic legal theory that no federal law barred entities like [the University] from hiring undocumented students.  Over several months, the University consulted with numerous law firms and legal experts inside and outside of [the University]; explored other legal options, including declaratory relief; and studied potential risks to [the University's] institutions, undocumented students and their families, and staff and other members of [the University] community.  The University has concluded that the proposed legal pathway is not viable at this time and carries significant risk for the institution and those it serves.  For that reason, it is inadvisable for [the University] to proceed with implementation at this time."

After the vote, the California legislature passed a bill requiring the University and other public postsecondary education institutions not to "disqualify a student from being hired for an employment position due to their failure to provide proof of federal work authorization," except where "that proof is required by federal law" or "as a condition of a grant that funds the particular employment position [at the campus] for which the student has applied."  (Assem. Bill No. 2586 (2023–2024 Reg. Sess.) § 1, art. 3.8, subd. 66029(a) (Assem. Bill No. 2586).)  The

4

bill also required these institutions to treat the prohibition on hiring undocumented students found in IRCA "as inapplicable because that provision does not apply to any branch of state government." (*Id*. at subd. 66029(b).)

The Governor vetoed the bill. While noting California's "proud history" of "expanding opportunities for undocumented students who seek to realize their higher education dreams," the Governor explained that "the gravity of the potential consequences of th[e] bill, which include potential criminal and civil liability for state employees," prevented him from being able to sign the bill. (Governor's veto message to Assembly on Assem. Bill No. 2586 (Sept. 22, 2024) p. 1, https://www.gov.ca.gov/wp-content/uploads/2024/09/AB-2586-Veto-Message.pdf.)

In October 2024, petitioners filed the present petition seeking a "writ of mandate directing the Regents to abandon its unsound and unlawful policy" of refusing to hire undocumented students for on-campus work.[1] Petitioners asserted two legal theories in support of their petition: (1) the policy is an abuse of discretion because it is premised on the University's misinterpretation of the IRCA, and (2) the policy violates FEHA by discriminating based on immigration status. Petitioners characterized their petition as presenting "a novel legal question" as to whether IRCA applies to state government entities such as

---

[1] The petition did not include a prayer for relief but characterized the petition as seeking "a writ invalidating the Policy and directing the Regents to evaluate students' applications for employment without regard to IRCA's prohibition on hiring unauthorized workers."

5

the University, and averred that their petition "does not require resolution of any factual disputes." This court initially issued an order summarily denying the petition for writ of mandate.

Petitioners sought review in the Supreme Court and the University submitted the following answer to the petition for review: "Petitioners argue that case law and the plain text of [IRCA] support a conclusion that IRCA does not apply to the University of California. Federal regulations, consistent with the federal government's historical interpretation and enforcement of IRCA, purport to broadly prohibit 'governmental bod[ies]' from employing undocumented workers. (8 C.F.R. § 274a.1(b).) The applicability of IRCA to the University has never been directly addressed by any state or federal court. And the penalties for violating the regulation are severe and contemplate both substantial civil penalties as well as criminal sanctions, including imprisonment. (8 C.F.R. § 274a.10.) Thus, there is uncertainty and risk as to both the scope of IRCA and the applicability of 8 C.F.R. § 274a.1(b). [¶] The University believes that a court ruling addressing this uncertainty could provide value to all interested parties—specifically, a judicial declaration as to whether federal law permits the University to hire undocumented students without threat of civil or criminal penalties for doing so." The Supreme Court granted review and transferred the matter back to this court with instructions to

6

issue an order to show cause. We issued the OSC and asked the University to address four questions in its return.[2]

In its return, the University adopts a position at odds with the one it took before the California Supreme Court. The University now asserts that, while it shares petitioners' "goal of offering all undocumented students employment opportunities, . . . this proceeding is not a way to achieve that goal. A writ proceeding cannot, by its nature, weigh the risks that the University must weigh when setting policy that could affect the livelihood of its students and employees for years to come. Those risks do not rise and fall on a simple statutory analysis of IRCA." It contends that "[p]etitioners cannot wave away these risks by presenting this case as if it were one for a declaratory judgment as to the meaning of IRCA." The University argues further that petitioners' argument that its employment policy violates FEHA "is not, as Petitioners argue, simply a matter of statutory interpretation as to the best reading of IRCA—it is far more complex. FEHA is intended to root out invidious

---

[2] The questions were: (1) What is the legal basis for the Regents' policy of refusing to hire undocumented students, e.g., Section 1324a(a), 8 C.F.R. § 274a.1(b), both, and/or something else? (2) If this court concludes that Section 1324a(a) does not apply to the University of California, does that conclusion entitle petitioners to the relief requested in the petition, and if not, why not? (3) If petitioners would not be entitled to the relief requested regardless of whether Section 1324a(a) applies to the University of California, should this court decide whether the statute applies? (4) Does 8 C.F.R. § 274a.1(b) have any meaning or effect independent of Section 1324a(a), and if so, why?

discrimination—including, per regulation, on the basis of immigration status. The University's work authorization policy is not discrimination on the basis of immigration status: The University hires undocumented students, provided they have federal work authorization—such as students enrolled in DACA. And in any event, the credible threat of federal enforcement is a legitimate, non-discriminatory reason for the University's work authorization policy that provides a complete defense to any FEHA claim." In response to our questions, the University states that, "[b]ecause the University's work authorization policy is based on a careful balancing of risks to the community, a holding in this action that Petitioners' interpretation of IRCA is correct does not demonstrate that the University abused its discretion or violated FEHA." Accordingly, the University argues that this Court "need not decide whether IRCA applies in order to deny the Petition."

In their reply, petitioners clarify that they are seeking an order directing the University to adopt a new student employment policy that assumes IRCA does not apply. They argue that the University's characterization of its decision as based on "risk" rather than statutory interpretation is unavailing for the following reasons: "First, any 'risk' would dissipate the moment that this Court rules in petitioners' favor. Second, all available evidence, including the litigation positions adopted by the [United States Department of Justice] during the first Trump Administration, suggests that the federal government would not interpret IRCA to apply to the [University]. Third, the 'risk' of

8

litigation defense would insulate even the most grievously unlawful conduct from judicial review. Fourth, 'litigation risk' is not meaningfully distinct from taking a position on the merits of the underlying legal question." They also argue that the University's concerns regarding the risk of federal enforcement do not justify continued use of a policy that discriminates against undocumented students in violation of FEHA.

## DISCUSSION

Initially, we note that the "Supreme Court's transfer order does not mean petitioners are correct on the merits or that a writ should issue, but rather we should reconsider the matter and file an opinion." (*Desert Outdoor Advertising v. Superior Court* (2011) 196 Cal.App.4th 866, 872, citing *Turner v. Superior Court* (1998) 67 Cal.App.4th 1432, 1434, fn. 1.) The Supreme Court's order determined, however, that petitioners lack "an adequate remedy" and that "extraordinary relief is the only adequate avenue for review." (*Gressett v. Superior Court* (2010) 185 Cal.App.4th 114, 117, fn. 2.) Accordingly, we consider the merits of the arguments asserted by petitioners for issuance of a writ.

## I.    Traditional Mandamus

The applicable standard for our review is well settled: " 'An ordinary mandamus action under Code of Civil Procedure section 1085 permits judicial review of . . . quasi-legislative acts of public agencies. . . . [Citation.] . . . Mandamus may issue to correct the exercise of discretionary legislative power, *but only* if the action taken is so palpably unreasonable and arbitrary as to show an abuse of discretion as a matter of law.' " (*Schwartz v.*

9

*Poizner* (2010) 187 Cal.App.4th 592, 596.) " ' "In determining whether an abuse of discretion has occurred, a court may not substitute its judgment for that of the administrative board [citation], and if reasonable minds may disagree as to the wisdom of the board's action, its determination must be upheld [citation]." [Citation.] A decision is an abuse of discretion only if it is "arbitrary, capricious, entirely lacking in evidentiary support, unlawful, or procedurally unfair." ' " (*Alejo v. Torlakson* (2013) 212 Cal.App.4th 768, 780; *Personnel Com. v. Board of Education* (1990) 223 Cal.App.3d 1463, 1466 ["[j]udicial intervention is warranted when a public entity adopts a rule or makes a policy decision of general application which is shown to be . . . unlawful"]; *Martinez v. City of Clovis* (2023) 90 Cal.App.5th 193 [writ of mandate may be used to challenge city's housing element and related zoning ordinances as violative of FEHA].)

As set forth more fully above, petitioners initially asserted that the University abused its discretion by continuing to enforce its employment policy based on a misinterpretation of IRCA. In response, the University asserted that the decision to suspend the working group was based, not on its interpretation of IRCA, but rather on a determination that the risk of harm that might result from any modification of the policy weighed against its amendment. The meeting minutes support the University's assertion that the decision not to alter the existing policy was based on its assessment of the risk of harm, not a statutory prohibition. We agree with the University that generally a quasi-legislative policy decision based on an assessment of risks falls

10

within its sound discretion, subject only to judicial interference based on a showing that the decision was an abuse of discretion.

Most of petitioners' arguments to the contrary can be rejected summarily. Petitioners argue that a decision by this court holding that IRCA does not apply to state government entities would eliminate any risk that the University could be liable for violations of that statute. But elimination of the risk after the fact does not show that it was an abuse of discretion for the University to consider that risk when the policy decision was made.[3] Petitioners assert that the University's fears are unlikely to materialize. The University, however, cites statements by government officials that, coupled with the federal regulation, support the conclusion that its concerns are not entirely unfounded. Petitioners argue that permitting the University to rely on litigation risk would insulate every decision from judicial review. Not so. Reliance on unfounded, arbitrary, or capricious fears of litigation to adopt a discretionary policy would amount to an abuse of discretion subject to correction by writ of mandate.[4] Finally, petitioners contend that the University's reliance on litigation risk is not "conceptually distinct" from taking a position on the merits. Petitioners argue that "[a]ny invocation of

---

[3] The meeting minutes quoted above reflect that the University, as part of its process, considered whether it should try to seek a judicial declaration from a federal court and decided against it. Petitioners have not argued that the decision not to pursue litigation to resolve the risk was an abuse of discretion.

[4] We discuss below petitioners' argument that the University's litigation risk defense would insulate unlawful conduct from judicial review.

11

litigation risk would . . . have to involve some assessment of the merits of the underlying legal issue, since it is the judicial resolution of that issue that gives rise to any 'risks.' " We agree that some assessment of the merits of the underlying legal issue is required for the University's reliance on litigation risk to be considered reasonable. The University was not required, however, to conclude that IRCA necessarily applied to state government employers. For purposes of traditional mandate, such an interpretation need only be reasonable—i.e., not arbitrary or capricious.[5] For example, it is not arbitrary and capricious for the University to adopt a policy in reliance on a federal regulation, even if the University's reasonable interpretation of the regulation later proves to be incorrect.

The University's reliance on this standard of review, however, does not resolve petitioners' argument that the employment policy is not just arbitrary and capricious but also contrary to state law. The University has not cited, nor have we found, any authority suggesting that the continued use of an policy that is *unlawful* under state law can be justified solely on a determination that discontinuing the policy might result in significant harm to the students and employees of the University based on perceived risks of potential federal law violations, even

_____

[5] Petitioners' suggestion that the University was required to show that there was a " 'substantial likelihood' that a court would hold that [the University] is bound by IRCA's prohibition on hiring undocumented persons" is inconsistent with the applicable standard.

12

reasonable risks based on a careful assessment of what positions federal actors might take.

Pursuant to section 12940 of the Government Code, it is unlawful "[f]or an employer, because of the . . . national origin, . . . of any person, to refuse to hire or employ the person."  (Gov. Code, § 12940, subd. (a).)  Section 11028 of title 2 of the California Code of Regulations was adopted in 2018 to expand and clarify "existing rules that interpret how the Fair Employment and Housing Act applies to the protected class of national origin in the employment context."  (Cal. Code Regs., tit. 2, § 11028; 2018 CA REG TEXT 458689.)  Subdivision (f)(3) of that regulation reads:  "It is an unlawful practice for an employer or other covered entity to discriminate against an employee because of the employee's or applicant's immigration status, unless the employer has shown by clear and convincing evidence that it is required to do so in order to comply with federal immigration law."[6]

Initially, the University argues that its policy does not violate FEHA because it does not discriminate based on immigration status but rather on the unprotected classification of whether a student has federal work authorization.  The

---

[6] The University suggests that this court should not reach petitioners' argument that its policy violates FEHA because petitioners have an adequate remedy via FEHA's "comprehensive remedial scheme."  As discussed below, we do not reach petitioners' alternative argument that the University's policy violated FEHA.  Rather, we conclude that the University abused its discretion by relying on inapplicable criteria in adopting its policy.

13

University also notes that it hires students with DACA status, so the policy does not discriminate against undocumented students as a whole. In response, petitioners argue that, because "students lack federal work authorization because of their immigration status," the "lack of federal work authorization is therefore not materially distinct from immigration status itself." They argue further that discrimination based on immigration status is unlawful even if the policy applies only to a subset of undocumented students—those without work authorization. Under section 11028, subdivision (f)(1) of title 2 of the California Code of Regulations, "[a]ll provisions of the Act and these regulations apply to undocumented applicants and employees to the same extent that they apply to any other applicant or employee." Section 11027.1, subdivision (c) defines "[u]ndocumented applicant or employee" to mean "an applicant or employee who lacks legal authorization under federal law to be present and/or to work in the United States." Thus, refusing to hire undocumented students because they lack work authorization is discrimination based on immigration status. Because the University's policy facially discriminates based on immigration status, under section 11028, subdivision (f)(3), the policy is an "unlawful practice" unless the University can show by clear and convincing evidence that its policy is required in order to comply with federal immigration law.

We note that no court has considered how the "clear and convincing evidence" standard applies in this unusual context. Whether discrimination is required by IRCA is not a matter of

14

evidentiary proof. It is a question of statutory interpretation.[7] But however the standard is construed, the University has made no attempt to satisfy it because it has expressly declined to take a position on whether IRCA applies to state government entities. Nor has it submitted any briefing responsive to the merits of petitioners' argument that IRCA does not apply. While the University asserts that "the text of 8 C.F.R. § 247a.1(b), . . . applies IRCA to all 'governmental bod[ies],' including the University," it does not claim that this is a correct interpretation of Section 1324a.[8] Nor does it even argue that the regulation expressly includes the University within the meaning of "any . . . government body," such that it was required to adopt its policy

_____

[7] The University has not challenged the lawfulness of the regulation, so we assume for purposes of this proceeding that the regulation is an enforceable interpretation of national origin discrimination under FEHA. (See *Connell v. Superior Court* (1997) 59 Cal.App.4th 382, 394 ["our review is limited to contentions raised in the briefs"].)

[8] The University's assertion regarding the regulation is found in its response to our question seeking the legal basis for its policy, which reads more fully as follows: "[T]he University has adopted its policy of hiring only individuals with federal work authorization based on the significant risk that the federal government and a federal court would find that the University had violated IRCA if it hired such individuals for employment. The University's assessment of this risk is based on a lack of legal clarity over the scope of 8 U.S.C. § 1324a(a), including no decision binding the federal government to Petitioners' understanding of the statute; the text of 8 C.F.R. § 247a.1(b), which applies IRCA to all 'governmental bod[ies],' including the University; and the federal government's current aggressive enforcement posture. The University's work authorization policy is *not* based on its own, independent determination that IRCA should be read to apply to the University."

15

based on the regulation itself.[9]  Rather, the University argues that its policy is permissible even if this court were to conclude that IRCA (and by extension the regulation) does not apply to state government entities.  Accordingly, the question before us is whether the continued use of a facially discriminatory policy can be justified solely by the University's assessment of the risks posed by the termination of its policy.

The University argues that protecting itself, its students, and its employees from "potentially severe penalties and enforcement consequences from the federal government were it to hire undocumented students without federal work authorization" is "a legitimate, nondiscriminatory" reason for its policy.  None of the authority cited by the University establishes, however, that an employer may engage in an "unlawful employment practice"—i.e., discriminate based on immigration status without a showing that such discrimination is required by federal law—based solely on concerns, however reasonable, that there may be significant consequences to adopting a contrary practice.

Section 11010, subdivision (a) of title 2 of the California Code of Regulations, cited by the University, sets forth the "Bona Fide Occupational Qualification" defense to intentional discrimination:  "Where an employer or other covered entity has a practice that on its face excludes an entire group of individuals on a basis enumerated in the Act (e.g., all women or all

_____

[9] At oral argument, the University clarified that it has taken no position on whether the regulation interprets IRCA to apply to state governmental entities like the University.

16

individuals with lower back defects), the employer or other covered entity must prove that the practice is justified because all or substantially all of the excluded individuals are unable to safely and efficiently perform the job in question and because the essence of the business operation would otherwise be undermined." This defense, "when applied to justify overt disparate treatment, has two components: First, the employer must demonstrate that the occupational qualification is 'reasonably necessary to the normal operation of [the] particular business.' Secondly, the employer must show that the categorical exclusion based on protected class characteristic is justified, i.e., that 'all or substantially all' of the persons with the subject class characteristic fail to satisfy the occupational qualification. [Citations.] In effect, the employer must establish that the class characteristic is a 'proxy' for lack of the necessary occupational qualification." (*Johnson Controls, Inc. v. Fair Employment & Housing Com.* (1990) 218 Cal.App.3d 517, 540, italics omitted.) The University cannot claim that federal work authorization is a bona fide occupational qualification without showing that the federal law requiring work authorization applies to the University. A preference for employees with work authorization, so as to avoid the potential for enforcement proceedings, does not establish that the University's policy is reasonably necessary to its normal business operations.

The cases cited by the University for the proposition that "it is not discrimination to seek to avoid prosecution—including where that risk arises from a federal regulation," are not on

17

point. In *Griffin v. Crossett School Dist., Inc.* (W.D.Ark. July 1, 2008, No. 07-CV-1015) 2008 U.S.Dist. Lexis 50367, at pp. *5–*6, a fourteen-year-old black student and his parents alleged that the defendants discriminated against the child because of his race when he was expelled from school for violating the school district's weapon policy while a white student who violated the same policy was only suspended. The court granted summary judgment in favor of the defendants, finding that the disparate treatment was justified by the different limitations on discipline imposed by the committees that evaluated the students under section 504 of title 1 of the Rehabilitation Act of 1973 (29 U.S.C. § 701 et seq.). (*Griffin,* at pp. *10–*12.) In *Cole v. Roadway Express, Inc.* (W.D.N.Y. 2002) 218 F.Supp.2d 350, 356, the plaintiff alleged that the defendants violated the Americans with Disabilities Act (42 U.S.C. § 12181 et seq.) by refusing to hire him because of a disability. The court granted the defendant's motion for summary judgment on the ground that the plaintiff could not be hired because he did not pass a medical certification required by Department of Transportation regulations. In both cases, the defendant employers were not liable for discrimination because they established that their conduct was required by federal law. As noted above, the University has not argued, let alone proven, that its policy is required by federal statute or regulation.

The University argues further that, "[e]ven if Petitioners successfully show that IRCA is best read not to apply to the University, . . . both state and federal courts have repeatedly and correctly held, the desire to avoid a credible risk of litigation is a

18

legitimate and nondiscriminatory basis for a policy—whether or not the litigation would ultimately result in a judgment against the employer."  Again, none of the cases cited by the University holds that an employer can continue to engage in an *unlawful* employment practice solely to avoid possible litigation over the practice's lawfulness.

In *Howe v. Bank of America, N.A.* (2009) 179 Cal.App.4th 1443, 1452, the court rejected the plaintiff's claim that the defendant had arbitrarily discriminated against United States citizens in violation of the Unruh Civil Rights Act (Civ. Code, § 51 et seq.) by requiring that citizens provide a Social Security number to open a credit card account, while allowing foreign nationals to open an account using an alternative form of identification.  The court found that the defendant's policy was not arbitrary because it complied with federal regulations that specifically required the defendant to obtain a Social Security number from any citizen who opens an account but permitted noncitizens to open an account with either a Social Security number or some alternative identification number.  (*Howe,* at pp. 1452–1453.)  The court also rejected the plaintiff's claim that because the federal regulation imposed only " 'minimum' identification requirements," the defendant's failure to apply the same standard to all applicants was not required by the federal regulation.  (*Id*. at p. 1453.)  The court explained:  "The distinction between the types of identification numbers required for United States citizens and foreign nationals is one created by federal law, not by Bank of America, and presumably reflects a

19

determination that the alternative identification numbers which may be used by foreign nationals effectively serve the same purposes as a Social Security number. For Bank of America to depart from those required minimums by imposing stricter requirements on foreign nationals, but not on United States citizens, might itself appear discriminatory in the context of the regulatory scheme, and thus might subject Bank of America to litigation. Even if that litigation were not successful (and like the trial court, we express no opinion on the point), Bank of America nonetheless has a strong incentive to avoid the expense and controversy associated with defending such a claim. Consequently, we conclude Bank of America did not act 'arbitrarily' when it simply applied the minimum identification standards imposed by federal law to *both* foreign nationals and United States citizens seeking to obtain a credit account." (*Ibid*.) In that case, there was no dispute that the federal regulation applied to the defendant's business and permitted the challenged discrimination. Accordingly, while the court held that the desire to avoid litigation would justify a decision not to *exceed* the minimum requirements of the federal regulation, the court did not hold that discrimination could be justified by the desire to avoid litigation as to whether the discrimination is required by the regulation in the first instance.

In *Lee v. K Mart Corp.* (D. Minn. 2011) 836 F.Supp.2d 841, 848, the plaintiff, who worked as a loss prevention officer, alleged that she was terminated because of her race. In granting the defendant's motion for summary judgment, the court found that

20

the defendant "set forth a legitimate, nondiscriminatory reason for terminating Lee—Lee violated Kmart's 'Hands–Off' Policy and subjected it to litigation risk" by slapping or tapping the suspected shoplifter's companion on the cheek. (*Id.* at pp. 846, 849.) The court's explanation meant that the plaintiff was terminated not because of her race, but because she violated the company's policy regarding interactions with suspected shoplifters and thereby subjected the company to the risk of litigation by the person she struck. The employer was not arguing that it could terminate an African-American employee to avoid risks associated with litigation over the lawfulness of employing African-Americans—the argument that would parallel the one offered by the University here. Nothing in the court's opinion suggests that such a reason would be nondiscriminatory.

In *Estes v. Vilsack* (D.Colo. Sept. 17, 2013, Civ. A. No. 11-cv-03109-PAB-MJW) 2013 U.S.Dist. Lexis 132836 at page *27, the plaintiff asserted a discrimination claim on the ground that she received less pay than a similarly situated male colleague. The trial court granted the government employer's motion for summary judgment, finding that the government "identified legitimate nondiscriminatory reasons for its compensation decisions," including that it had settled litigation involving the male employee's Equal Employment Opportunity claim "because it determined that it was in the [employer's] best interest to settle in light of the costs associated with litigation." (*Id.* at p. *34.) Once again, this case does not support the University's position. Nowhere did the government contend that it would not

21

be discriminatory to pay a female employee less than a similarly situated male employee to avoid a risk of litigation over a decision to pay her at parity. It was arguing that the plaintiff's pay disparity was not based on her sex because the pay of the male colleague alleged as a comparator was the result of a litigation settlement with that employee. The court found that the plaintiff had failed to offer any evidence to show that the government had settled with the male employee, and not with the plaintiff, because of her sex. (*Id.* at p. *42.)

Next, the University argues that FEHA's statutory "safe harbor" provisions, which it asserts "affirm[] that an employer is not liable for actions motivated by a desire to comply with a directive from the federal government[,] . . . independently preclude liability for the University's adoption of a policy to avoid a credible threat of federal prosecution." Describing section 11028, subdivision (f)(3) of title 2 of the California Code of Regulations as a safe harbor—again, the regulation that allows the employer to show "by clear and convincing evidence" that federal law requires it to discriminate based on immigration status—does not change the result. As discussed above, the University does not argue that its policy complies with a "directive" from the federal government.

The University's reliance on Vehicle Code section 12801.9, subdivision (g)(2)(B) is similarly misplaced. Section 12801.9, subdivision (a), authorizes the Department of Motor vehicles to issue a driver's license to a person who is unable to submit satisfactory proof that the applicant's presence in the United

22

States is authorized under federal law if certain requirements are met. Section 12801.9, subdivision (g)(2)(A), makes it a violation of FEHA for an employer to discriminate against a person because the person holds or presents a driver's license or identification card issued pursuant to this section. Section 12801.9, subdivision (g)(2)(B), cited by the University, provides, "Notwithstanding subparagraph (A), this section shall not be construed to alter an employer's rights or obligations under Section 1324a . . . regarding obtaining documentation evidencing identity and authorization for employment. An action taken by an employer that is required by [section 1324a] is not a violation of law." Again, the University has not established that its policy is required by IRCA. It asserts only that it has a credible fear that the federal government might determine that the policy is required by federal law and it does not want to risk the penalties that might result from a violation.

We also briefly reject the University's suggestion that "the conclusion that FEHA does not apply here is consistent with the California Legislature's attempt, just last year, to pass Legislation that would have ordered the University to do precisely what Petitioners contend FEHA already compels." Unlike this regulation, the bill that was vetoed by the Governor would have required the University to treat the IRCA's prohibition on hiring undocumented students "as inapplicable because that provision does not apply to any branch of state government." (Assem. Bill No. 2586 § 1, art. 3.8, subd. 66029(b).) In other words, it would have prevented the University from

23

making the showing required by this regulation that its policy was required by IRCA.

Finally, the University argues that the consequences of holding that FEHA "applies to the University's work authorization policy" would be "far-reaching and fraught." There is, however, no dispute that the University is an employer for purposes of FEHA. (Gov. Code, § 12926, subd. (d) ["Employer" includes any person regularly employing five or more persons, or any person acting as an agent of an employer, directly or indirectly, the state or any political or civil subdivision of the state, and cities"].) The University has not cited any authority suggesting that its employment policies are exempt from FEHA.

The University argues that if it is required to prove conclusively that it is required to comply with IRCA, "no employer in California could safely rely on federal regulations or the federal government's interpretation of a federal statute when making employment decisions—no matter how clear the risk of federal prosecution." But again, the University does not assert that it relied on the requirements of a federal statute or regulation in deciding to not to amend its policy—only on the risks associated with adopting a policy that the federal government might consider unlawful. We understand why the University does not want to offer an argument in support of what it believes will be the federal government's interpretation of IRCA or the regulation, and we do not speculate about why it has so far decided against an effort to escape its predicament by seeking a declaratory judgment against the government. But a

24

predicament it is:  The policy is unlawful under FEHA unless federal law requires it, and neither the University nor anyone else has argued to us that it does.  Without more, there is no basis for us to hold that the risk of federal prosecution alone justifies continuing it.

Accordingly, we conclude that the University abused its discretion by relying on an improper justification for continued application of its facially discriminatory policy and that a writ should issue directing the University to reconsider its policy based on proper criteria.  (See *Alameda Health System v. Alameda County Employees' Retirement Assn.* (2024) 100 Cal.App.5th 1159, 1177, [" '[m]andamus may issue . . . to compel an official both to exercise his discretion . . . under a proper interpretation of the applicable law' "]; *Monterey Mechanical Co. v. Sacramento Regional County Sanitation Dist.* (1996) 44 Cal.App.4th 1391, 1412, 1414 [writ of mandate under Code of Civil Procedure section 1085 was appropriate where the sanitation district used improper criteria in reaching its decision].)

## II.    FEHA Violation

As set forth above, petitioners asserted two grounds for relief, the second of which was that the University's policy violates FEHA as a matter of law.  In the brief submitted with their petition, petitioners argued that because Section 1324a does not apply to the University, the policy "plainly" violates FEHA. However, neither the petition nor petitioners' opening brief even mentioned 8 C.F.R. section 274a.1(b), let alone offered any

25

argument about what it means. While petitioners argue for the first time in their reply brief that this regulation does not clearly construe IRCA to apply to government entities like the University, that argument comes too late. (*People v. Ng* (2022) 13 Cal.5th 448, 568, fn. 13; *Dameron Hospital Assn. v. AAA Northern California, Nevada & Utah Ins. Exchange* (2022) 77 Cal.App.5th 971, 982.) For the same reason, we decline to take up petitioners' argument—again, set forth for the first time in the reply brief—that an agency regulation cannot establish that Congress intended to regulate the States when the underlying statute is not unmistakably clear on that question. Accordingly, while petitioners have established that the University abused its discretion in adopting the policy, they did not establish, as they asserted in their opening brief, that the University's policy violates FEHA as a matter of law. For this reason, we have not offered an interpretation of Section 1324a or the related regulation.

## III. Issuance and Scope of Writ

In its return, the University argues that "[e]ven if Petitioners identified some basis for a writ to issue," this court should exercise its discretion to decline to issue the writ because issuance of a writ in these circumstances would be "inequitable" and that requiring the University to "take an action that could put the University community at risk is not the appropriate way to address these issues." Instead, the University suggests that the proper way to resolve this issue is "through a declaratory judgment suit involving the federal government." In response,

26

petitioners reasonably assert that the University "could have brought that lawsuit at some point in the last two years—in response to the extensive student advocacy that preceded this action" and that "[i]n any event, that preference is not a sound basis to deny writ relief here."  We agree.  Our writ does not require the University to take any specific action, let alone one that will necessarily place the University community at risk.  The option the University identifies—a declaratory judgment suit against the federal government—is one that remains available to it in response to this writ.  We merely require that the University not rely on litigation risk alone as the justification for its facially discriminatory policy.[10]

## DISPOSITION

Let a writ of mandate issue directing the University to exercise its discretion in conformity with the principles articulated here to decide whether to continue use of its work authorization employment policy.  This opinion shall be final in this court seven days from the date of filing.  (Cal. Rules of Court, rule 8.490(b)(2)(A).)  Petitioners shall recover their costs.  (*Id.*, rule 8.493(a).)

GOLDMAN, J.

WE CONCUR:

BROWN, P. J.
STREETER, J.

---

[10] The University argues that the federal government is "a necessary party for any relief requiring [it] to change its work authorization policy."  We do not address its argument because we have not directed the University to change its policy.

| Jeffry Umaña Muñoz et al., Petitioners: | Altschuler Berzon, Stacey M. Leyton, Eileen B. Goldsmith, Max Carter-Oberstone<br>Organized Power In Numbers, National Day Laborer Organizing Network, Jessica Karp Bansal<br>Center for Immigration Law and Policy, UCLA School of Law, Ahilan T. Arulanantham, Stephany Martinez Tiffer |
|---|---|
| Regents of the University of California, Respondent: | Munger, Tolles & Olson, Bryan H. Heckenlively, J. Max Rosen, Hailyn J. Chen, Paul E. Martin, Julia Konstantinovsky<br>University of California Office of the General Counsel, Charles F. Robinson, Rhonda S. Goldstein |
| University of California Professors (Sameer Ashar, Richard Boswell, Caitlin Patler, Tom Wond), Amici Curiae on behalf of Petitioners: | Sidley Austin, Sean A. Commons, Robert P. McMahon |
| Local 4811, United Automobile, Aerospace and Agricultural Implement Workers of America, AFL-CIO; California Federation of Teachers, AFL-CIO; California Teachers Association, Amici Curiae on behalf of Petitioners: | California Teachers Association, York Chang<br>Rothener, Segall & Greenstone, Hannah Weinstein<br>Schwartz, Steinsapir, Dohrmann & Sommers, Margo A. Feinberg, Henry M Willis |